HENRY TRAPHAGEN, surviving executor &c. of John Levy, deceased,

*v.*

LEWIS LEVY et al.

1. Where the duty of a trustee is involved in doubt, it is his right to ask and receive the aid and direction of this court.

2. Where the matter to be determined presents questions of title in which other persons are interested, those persons should be made parties to the suit, otherwise the court should either stay the suit until such persons have been brought before it, or limit its determination of the questions presented by the trustee's need of present direction.

3. Where a testator provides that his executor shall have the "*care and custody*" of his estate, "*and pay all the legacies as herein directed*," and then, after giving a single specific legacy, provides that the net income of his estate shall be paid in several portions to certain persons at stated periods—*Held*, that the executors take the legal estate in trust to pay the income as directed.

4. The devise of such income to a testator's widow, being without limitation as to time, either in the devise or by other disposition of the income or of the land itself, is tantamount to a devise to her of the equitable fee of the land itself, and she being now dead and the purpose of the trust accomplished, her heirs may have a conveyance of the legal estate from the trustees.

5. By express provisions of the will the remaining persons entitled to shares of the net income take for their lives, and as they are yet living and as some of those who should be heard as to the disposition of the estate at their deaths may not yet be in existence, or as death may remove all doubt as to the future disposition of the estate before the executor needs further direction, such further direction will not now be given.

On bill for construction of will.

*Mr. H. M. T. Beekman,* for the complainant.

*Mr. W. W. Anderson,* for the defendants.

John Levy died in March, 1881, having made his last will, which has been duly admitted to probate, in which, after directing the payment of his debts and funeral expenses, he uses this language:

" *Second.* I do nominate, constitute and appoint my friends Christopher Reed and Henry Traphagen executors of this my last will and testament, and give them the care and custody of my estate, and to pay all the legacies as herein directed."

The executors are then directed to sell the testator's business, and out of the proceeds of such sale to pay any mortgage there may be at his death on his property, and, if that fund should prove to be insufficient to make such payment, to then sell his house, No. 186 Jersey avenue, in Jersey City, and apply the proceeds of its sale to that payment. If there should be a surplus of such proceeds after the payment contemplated, it is to be invested on bond and mortgage. The will then proceeds as follows:

" *Third.* I give to my beloved wife, Rebecca, all my household furniture and one-third of the income derived from my real estate after the payment of the taxes, assessments and all necessary repairs."

29

Designation is then made of a portion of the testator's real estate to be occupied by his widow, to use the language of the will—

"Free of rent during her natural life or as long as she shall remain my widow, and in the event of her remarrying again, then the income to be derived from said estate shall go to and be equally divided among my sons Lewis and David and my daughters Mary Ann, Sarah and Louisa, the above bequest being in lieu of dower."

The will continues :

"*Fourth*. I give to my children, Lewis, David, Mary Ann, Sarah and Louisa, each two-fifteenths of the *income* of my real and personal estate after the payment of all taxes and assessments levied on the same, and for necessary repairs, during their *respective lives*, and in case of the death of any of my said children hereinbefore mentioned leaving lawful issue him or her surviving, then the share of the income as aforesaid shall *descend* to and be divided among the child or children of my sons Lewis and David and my daughters Mary Ann, Sarah and Louisa *per stirpes* and not *per capita*, except as to the children of my son Lewis by his first wife, who are not in any event to have or derive any income or benefit from my estate. And in case of the death of my son Lewis without leaving other issue him surviving, then the income of my real and personal estate so bequeathed, shall go to and be divided among his brothers and sisters as if he had no child. And in case of the death of Lewis leaving lawful issue him surviving, other than the children of his first wife, then they are to receive the share of their father—but in case my said children shall die without leaving lawful issue, then my said estate to go to and be vested in my brothers and sisters, share and share alike, the *income* aforesaid to be paid quarterly and to commence on the fifteenth of each month. And in case any of my children shall assign or transfer, or attempt to assign, transfer or mortgage his or her share, then the share of such child or children so as aforesaid either transferring, assigning or mortgaging shall forfeit and go to and be divided among my children not so transferring, assigning or mortgaging."

The testator's widow and all his children survived him. The widow and Christopher Reed are now both dead. In paying the debts the personal estate was entirely exhausted. The surviving executor is in possession of the real estate, and quarter yearly divides the entire income equally among the testator's five children. Those children are all married, and, with the exception of the daughter Sarah, have lawful issue. Lewis has two chil-

Traphagen v. Levy.

·dren by his first wife, who obtained a divorce from him, and three children by a second wife.

The bill alleges that the children of the testator claim that the income of one-third of the real estate was given to the testator's widow for life, and that no disposition was made of the principal fund representing that one-third after the life-estate, but as to it their father died intestate, and that consequently it ·descended to them as his heirs at law, and further, that the devise ·of two-thirds of the income to them and its indefinite limitations ·to their children in the event of their death suspends the power ·of alienation too long and is void, and he seeks a construction of ·each and every part of the will.

The testator's children and their respective husbands and wives and children, including both the wives of Lewis and their ·children, have been made parties to the suit. The brothers and sisters of the testator have not been made parties.

The Chancellor.

Where the duty of a trustee is involved in doubt, it is his right to ask and receive the aid and direction of a court of equity to the extent that his necessities may require. The questions propounded may involve not only the duty of the trustee within the acknowledged limits of the trust and with reference to the trust estate, but also determination as to the title of the trustees and others to property. In the latter case, all persons interested in the several questions should be before the court in order that they may be bound by the court's decree. In their absence, the decree will serve only for the guidance and protection of the trustee in his relations to his trust. It is manifest that, when such persons are not before the court, the court should stay the case until they are brought in, or limit its determination of questions presented to the present need of the trustee.

The questions presented in this case relate entirely to title. The complainant's present need is to know whether he has any right and title in the real estate that the testator left, and, if he has, what its nature and extent is.

It is quite apparent that the testator's scheme was to take the

entire control and management of his real estate from his widow and children, but, at the same time, to make provision by which they should enjoy the profits from it. To accomplish this purpose he gave the "care and custody" of it to his executors, and directed them "to pay all the legacies as herein directed." It appears to be plain that within the word "legacies" the testator meant to include his gifts of income. He·gave only a single legacy of personalty, his household furniture, yet he spoke of legacies, using the plural. He disposed of the income of realty by the word "give," and subsequently spoke of it as having been "bequeathed," thus indicating a disregard of the strictly technical signification of words. The will contains no direction for the payment or delivery of the single legacy. The only gifts that it gives specific direction for the payment of, are the several portions of the net income. A cardinal ·rule in the construction of wills is, that effect must, if possible, be given to all its expressions. The expression "as herein directed," unless it gives a meaning to the word "legacies" as used in the will, must be meaningless. It can refer to nothing but the income.

It seems to me to be plain that the intention of the testator was, to make his executors trustees of his lands, to collect the rents and profits, and, after discharging therefrom the expense of maintaining the property, to pay whatever remains of it, at stated periods, to his wife and children in designated proportions. The executors take the legal estate in the land for this purpose.

Here the questions arise, how long the trust thus created is to continue, and whether, during its continuance, the trustee is to retain title to the entire estate.

It is well settled that a devise of the income or of the rents and profits of lands, without limitation as to time, either in the devise or by other disposition of the rents and profits or of the land itself, is tantamount to a devise of the land itself in fee. *Den* v. *Manners, Spen. 142; Den, Sharp,* v. *Humphreys, 1 Harr. 25; Diament* v. *Lore, 2 Vr. 220; Bird* v. *Davis, 1 McCart. 467, 476; Kay* v. *Kay, 3 Gr. Ch. 495, 497; Manning* v. *Craig, 3 Gr. Ch. 436; Hance* v. *West, 3 Vr. 233; Reed* v. *Reed, 9 Mass. 372; 4 Kent. Com. 536.*

Traphagen *v.* Levy.

Here the devise to the widow is of income.    It is to go to her for an indeterminate period of time if she shall not again marry. No other disposition is made of it, or of the undivided third of the principal of the estate which it represents.    Her interest, then, is an equitable fee in one-third of the testator's estate, subject to be defeated by her remarriage.    As she died without having been remarried, that equitable fee descended to her heirs at law.    The trust for the wife terminated at her death, and her heirs may now demand a conveyance of the legal estate.    *Gray Perp.* § *236*.

Now, as to the remaining two-thirds of the estate: The testator's five children are yet alive.    As to them the trust is expressly for their respective lives and is a clearly valid one, at least for that length of time.    *Gray Perp.* § *422*.    When they respectively die, the income is to go indeterminately to others, no ultimate disposition being made of it, or of the portions of the estate that it represents.    It would seem that this, as in the case of the widow, would carry the equitable fee with a right to a conveyance of the legal estate, but I do not now so decide.

It is unnecessary for the instruction of the complainant in his present duties that I shall define rights in which he need not now be concerned.    Before there may be occasion for further direction other persons may come into being who should be heard upon the questions to be determined, and whose rights cannot be concluded by a decree in the present suit, or death may remove all doubt as to the disposition of the estate.