This suit involves the construction of the will of John F. Beckman, who died on August 1st, 1926, leaving him surviving his widow, Johanna D. Beckman, now over seventy-one years of age, and two daughters, Harriet L. Hardy and Anna S. Hiltbruner, Harriet L. Hardy being the daughter of the decedent and his widow, and Anna S. Hiltbruner being the daughter of the testator and his first wife, now deceased.
The complainants are executors of John F. Beckman's will, which, save for the formal parts, reads as follows:
1. "I bequeath to my beloved wife, Johanna D. Beckman, my residence, including all furnishings and household goods, also all real estate surrounding said residence, located at Colts Neck, N.J. All tools, chickens, feed, etc.
2. "Also all money that is deposited in bank to my account I give to my wife, the said Johanna D. Beckman, and interest thereon.
3. "Should I receive any gift, property or money from any relative it is my wish that the same should be conveyed to my wife, Johanna D. Beckman, and the interest thereof.
4. "The above is given with the understanding that all this property will belong to her as long as she remains my legal and lawful widow.
5. "After the death of my widow the property shall be sold and divided in two equal parts. One part shall be given to my daughter Annie S. Hiltbruner, of Wayside, Mon. Co., N.J., and the other part to Harriet L. Hardy, of Millhurst, Mon. Co., N.J.
6. "I hereby revoke all former wills made by me.
7. "I appoint Garrett W. Buck and Edward Hardy, the former of Colts Neck and the latter of Millhurst, my legal executors without bonds."
I have arbitrarily numbered the paragraphs for convenience of reference.
The testator left a small farm of about nineteen acres in Monmouth county, referred to in the will as "my residence," the furnishings therein and about $6,000 in cash. He was also entitled to a one-fourth interest in the residuary estate of a deceased brother, which interest is valued at approximately $3,000 or $4,000. The defendant Henry Troger is the executor of the deceased brother's will.
The main question presented by the pleadings is respecting the interest of the widow, Johanna D. Beckman, in the estate of her husband. She and her daughter Harriet claim that she *Page 96 
is entitled to an absolute estate in the personalty and a life interest in the realty. The defendants Hiltbruner claim that the widow takes only a life estate, subject to termination before death by remarriage, in both personalty and realty. The Hiltbruner defendants also claim that the executors should be declared to be trustees under the will, or, in default thereof, and in the event that the whole estate is turned over to the widow, she should be required to give bond to protect those entitled in remainder. The executors also ask that the defendant Troger be directed to turn over to them the decedent's interest in the estate of John E. Beckman, the decedent's deceased brother. This defendant has not answered the bill of complaint and a decree pro confesso has been entered against him.
In determining the proper construction to be placed upon the language of this will in order to carry out testator's intentions, which must govern such construction, it is necessary, so far as possible, for the court to put itself in the position of the testator himself at the time the will was executed. The circumstances surrounding the drafting of the will and the testator's family and estate must, of course, be considered. This will was drawn by testator's spiritual, and not his legal, adviser. It is therefore couched in the language of the layman, which accounts, in some measure at least, for its inaptness of expression and the misuse of technical terms which lend some obscurity to its language.
The testator had been twice married and had two daughters, one by his first wife, then deceased, and one by his wife who was then living. There is nothing to indicate that he desired to prefer one of these daughters above the other in the distribution of his estate; in fact, the language of the will would indicate the contrary. At the time this will was prepared and at his death the testator resided on a small farm in Monmouth county, equipped with the usual trappings. It is quite apparent that it was his intention that upon his death his widow should be entitled to the use of this farm and its equipment during her lifetime and it is conceded by her counsel, who is also counsel for the Hardy defendants, that the real estate was devised to the widow for life with a *Page 97 
limitation over to the testator's two daughters upon her death. It is contended, however, by her counsel that this limitation over does not apply to the personal property and that the gift of the personal estate was absolute and unqualified. Feit v.Richards, 64 N.J. Eq. 16; Krueger v. Frederick, 88 N.J. Eq. 258; Gulick v. Gulick, 27 N.J. Eq. 498; Traphagen v. Levy,45 N.J. Eq. 448, and Jennings v. Reed, 75 N.J. Eq. 530, are cited in support of this contention.
I am unable, however, to agree with this contention. To adopt the construction placed upon the will by counsel for the widow would result in disinheriting the testator's daughter by his first wife, except as to the realty, while his apparent intention was that both daughters should be treated alike. It is my opinion that the testator intended the limitation which these counsel concede to apply to the realty to apply to the personal estate also and that he intended his widow to have the use and usufruct of his estate during her lifetime and upon her death that the principal should be divided equally between the two daughters; and I believe this construction of the will is amply supported by its plain language. It may be conceded for the purpose of argument that the first three paragraphs of the will above quoted, standing alone, would accomplish absolute gifts to the widow of the property therein mentioned; but, in my judgment, all three of these paragraphs are qualified and limited in their effect by the fourth and fifth paragraphs. It will be noted that in the fourth paragraph the testator says: "The above is given with the understanding that all this property will belong to her as long as she remains my legal and lawful widow." The words "all this property" must refer to all of the property mentioned in the three preceding paragraphs. We cannot select one from the number and thus apply it. In the fifth paragraph the testator says: "After the death of my widow the property shall be sold and divided in two equal parts." In my judgment, the words "the property" refer to the same property which was in the preceding paragraph designated as "all this property." The words in the fourth paragraph are all inclusive. The words "so long as she remains my legal and lawful widow" must be read with the words "after the death *Page 98 
of my widow" appearing in the following paragraph. So read, the meaning is clear that the widow is to have the use and income of all the property during her lifetime or until she remarries.
Having thus in broad terms, in paragraph 4, encompassed all his property in that reference, it was not necessary in the succeeding paragraph to be so explicit. The words "the property" were sufficient to include everything included in the words "all this property" as before used. This paragraph directs that "the property shall be sold and divided." But the land alone cannot be both "sold" and "divided." The direction is in the conjunctive, not the disjunctive. If the testator had intended this clause to apply to land only, he would probably have said "sold and the proceeds divided" or "sold or divided." What he meant by the language used is that the land should be sold and then "the property," both real and personal, divided. If, therefore, by the fifth paragraph of the will the estate of the widow in the realty is limited to a life estate, as is conceded by counsel, I am at a loss to understand why this same limitation does not apply to the personal estate, and I hold that it does.
Feit v. Richards, cited by counsel for the widow, is not an authority against my construction of this will. There was in that case no devise over with respect to the personalty; but in the instant case there is a devise over not only as to the realty but as to all the property, both real and personal. Nor is Krueger
v. Frederick opposed to this construction. There the court said that the paragraph of the will under discussion "passes an estate in fee-simple unless the will discloses an intent to convey only an estate for life or contains a division over upon the death of the first taker." As I read this will, it discloses both an intent to convey a life estate and contains a devise over upon the death of the first taker. In Gulick v. Gulick, supra, it was held that where an absolute gift is made in the first instance followed by a limitation over on the death of the first taker, the absolute gift is not defeated unless the gift over takes effect; but the gift over in the instant case does "take effect," as the estate in remainder has already vested subject, of course, to the life estate. The *Page 99 
gift over is upon the happening of an event certain to occur; namely, the death of the widow. Nor is Traphagen v. Levy
opposed to this idea. There the devise to the widow was of income for an indeterminate period of time conditioned upon her refraining from remarriage. No other disposition of the property was made in the event of forfeiture. There was no gift over and it was properly held that the trust for the wife terminated at her death; that the gift was absolute and that her heirs were then entitled.
That under the terms of the will the life interest of the widow might be terminated by her remarriage is not controlling to the extent of divesting the gift over. The Trenton Trust and SafeDeposit Co. v. Armstrong, 70 N.J. Eq. 572. In that case Vice-Chancellor Bergen quoted from the English cases of Eaton
v. Hewitt, 2 Drew and S. 184-192, and Browne v. Hammond,John's. Ch. (Eng.) 210, to the effect that "a devise or bequest over, though in terms made upon the marriage of the donee of the preceding estate, is to be extended by implication so as to take effect on the determination of that estate by death."
In Jennings v. Reed, supra, Vice-Ordinary Walker (now chancellor), at the bottom of page 532, called attention to two rules of construction, both well recognized. It is the latter of these two rules which I have applied in the instant case, while counsel for the widow has applied the former, and this explains our different conclusions. In that case the chancellor also stated that he did not consider the cases of Gulick v. Gulick
and Traphagen v. Levy opposed to the doctrine of theArmstrong Case, recognizing that Vice-Chancellor Bergen's decision was based upon the apparent intention of the testator which in all cases, if discernible, should govern. It is upon that principle, recognized by all the authorities, that my decision in the instant case is based.
I think it is apparent that it was the intention of the testator that the executor should continue in office until the death of the widow, at which time the estate was to be divided, and they will be regarded as trustees of the estate in the meantime and subject to all of the incidents of such relation. *Page 100 
As to the defendant Troger, executor, I am somewhat at a loss to understand why he was made a party defendant to this bill or how a claim of the complainant against the estate of which he is executor can be enforced in this suit. He is neither a necessary nor a proper party to a bill for the construction of the will here involved. It does not appear that there are rival claimants to the fund in his hands; but if so, he would be more properly the complainant and not a party defendant. The legal remedy of these complainants would seem to be adequate and the bill as to him will be dismissed, notwithstanding his failure to answer and the entry of a decree pro confesso against him.
I will advise a decree in accordance with these conclusions.